UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SYLVIA PANETTA,

                    Plaintiff,

       - against -

JOSEPH CASSEL, et al.,

                  Defendants.

**OPINION AND ORDER**

20-CV-02255 (PMH)

---

PHILIP M. HALPERN, United States District Judge:

Sylvia Panetta ("Plaintiff"), proceeding *in forma pauperis*, brings this action against the Town of Wallkill ("Town"), Orange County ("County"), Robert Hertman ("Hertman"), Michael Donaldson ("Donaldson"), Antonio Spano ("Spano"), Jason Farningham ("Farningham"), Anthony Grosso ("Grosso"), Kelly Ann Boss ("Boss"), Kate Monahan ("Monahan"), Barry Weissman ("Weissman"), Julia Ashworth ("Ashworth"), A. Solano ("Solano"), Christopher DiNapoli ("DiNapoli"), John Snellinger ("Snellinger"), Jessica Kenney-Steuber ("Kenney"), Joseph Steuber ("Steuber"), Daniel Covey ("Covey"), David Ayers ("Ayers"), and John and Jane Does 1-20 (together, "Defendants").[1] (Doc. 143, "TAC"). Plaintiff asserts in the Third Amended Complaint, the operative pleading, seven claims for relief: four claims under 42 U.S.C. § 1983 for (i) malicious prosecution, (ii) fabrication of evidence, (iii) conspiracy to fabricate evidence, (iv) a *Monell* claim against the Town and the County; and three state law claims for (v) malicious prosecution, (vi) intentional infliction of emotional distress, and (vii) abuse of process. (*Id.*).

---

[1] Defendants in this case are represented by two sets of counsel. Hertman, Donaldson, Spano, Farningham, Grosso, Boss, Monahan, Weissman, Ashworth, Solano, DiNapoli, Snellinger, Kenney-Steuber, Steuber, Covey (together with Ayers, the "Officer Defendants"), and the Town are represented by the law firm Portale Randazzo LLP. The County and Ayers ("County Defendants") are represented by the Office of the County Attorney for Orange County.

Defendants, pursuant to the briefing schedule set by the Court, filed their motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) on February 27, 2023. (Doc. 149; Doc. 150, "Def. Br."; Doc. 151, "Randazzo Decl."; Doc. 152; Doc. 153; Doc. 155, "Cardoso Decl."). Plaintiff filed her opposition (Doc. 148, "Pl. Br."), and the motion was fully submitted upon the filing of Defendants' reply (Doc. 154, "Reply").

For the reasons set forth below, Defendants' motions to dismiss are GRANTED.

## BACKGROUND

Plaintiff alleges that she owned and operated "an internationally known Rottweiler breeding/importing kennel" known as "Karousel Kennels" at her home in Wallkill, New York. (TAC ¶ 12). The Town of Wallkill Police Department received a complaint on March 6, 2012 about a large number of dogs on Plaintiff's property. (TAC ¶ 13). Farningham and Grosso entered Plaintiff's property that same day without a warrant and searched her property. (*Id.* ¶ 14). Framingham and Grosso were later joined on Plaintiff's property by the remaining Officer Defendants. (*Id.* ¶¶ 16-17). Farningham and Ashworth obtained a search warrant for Plaintiff's property at some unspecified time after the initial entry and search by Farningham and Grosso. (*Id.* ¶ 22). The Officer Defendants removed two "deformed dogs" from Plaintiff's property on March 6, 2012. (*Id.* ¶ 24). The Officer Defendants obtained a second warrant on April 29, 2012 and seized an additional 21 "deformed dogs" from Plaintiff's property on April 30, 2012. (*Id.* ¶ 25). Plaintiff was arrested on April 30, 2012 and charged with animal cruelty. (*Id.*).

The Town Court of Wallkill, New York ("Town Court") held Plaintiff's bond hearing on June 15, 2012. (*Id.* ¶ 85). At the bond hearing, Farningham testified that the grass on Plaintiff's property was "tall and that he could not see the dogs from the house," but then offered contradictory testimony later in the hearing. (*Id.* ¶ 88). Plaintiff alleges that Kenney gave false testimony at the bond hearing "regarding the condition of the inside of Plaintiff's house" and that

Ayers gave false testimony "regarding the condition of the dogs and their environment." (*Id.* ¶¶ 91, 93). The criminal proceeding was transferred in July 2012 from the Town Court to the City Court of Middletown, New York ("City Court"). (*Id.* ¶ 96).

The City Court held a suppression hearing on May 14, 2013. (*Id.* ¶ 104). Plaintiff alleges that Farningham gave false testimony regarding the reason for the officer's initial March 6, 2022 visit to Plaintiff's home. (*Id.*). Plaintiff further alleges that Ashworth, Ayers, Monahan, Steuber, and Kenney all gave false testimony during Plaintiff's June 10, 2015 trial. (*Id.* ¶¶ 116-127). Plaintiff alleges that these Defendants gave the following false testimony at trial:

- Ashworth gave false testimony regarding the reason for the officer's initial March 6, 2022 visit to Plaintiff's home and regarding "the interior of Plaintiff's home and outside dog runs." (*Id.* ¶¶ 116, 118).

- Ayers gave false testimony regarding his familiarity with Rottweilers and the condition of the water bowls on Plaintiff's property. (*Id.* ¶ 120).

- Monahan gave false testimony "regarding the conditions of the interior of Plaintiff's house, and the dogs and their environment." (*Id.* ¶ 124).

- Steuber gave false testimony regarding the number of dogs on Plaintiff's property and the amount of food the dogs were provided. (*Id.* ¶ 125).

- Kenney gave false testimony "about the condition in Plaintiff's home." (*Id.* ¶ 127).

The City Court rendered a judgment on September 3, 2015, upon a jury verdict, convicting Plaintiff "of eight counts of animal cruelty (Agriculture and Markets Law § 353), 54 counts of inadequate shelter (Agriculture and Markets Law § 353-b), and four counts of cruelty to animals for failing to seek veterinary care (Code of the Town of Wallkill § 70-18). *People v. Panetta*, 66 Misc. 3d

145(A), 2020 WL 742324 (N.Y. App. Term. 2020).[2] The Appellate Term of the New York Supreme Court, on appeal, vacated the City Court's order denying Plaintiff's suppression motion and reversed Plaintiff's conviction. *Id.* The instant lawsuit followed.

## STANDARD OF REVIEW

I.    Federal Rule of Procedure 12(b)(6)

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[3] A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

---

[2] Although the disposition–the guilty verdict rendered by the jury and subsequent vacatur of that conviction–of the underlying criminal proceeding giving rise to Plaintiff's claims are not referenced in the TAC, the Court nevertheless considers the disposition of the criminal proceeding as integral to the TAC. *See Hanniford v. City of Poughkeepsie*, No. 21-CV-10359, 2022 WL 17325762, at *1 n.2 (S.D.N.Y. Nov. 29, 2022) (considering the disposition and sentencing information as integral to the complaint of a plaintiff pressing a malicious prosecution claim); *Lockett v. City of Middletown*, No. 19-CV-08255, 2021 WL 1092357, at *1 n.3 (S.D.N.Y. Mar. 22, 2021) (same); *Tarrant v. City of Mount Vernon*, No. 20-CV-09004, 2021 WL 5647820, at *1 n.2 (S.D.N.Y. Dec. 1, 2021) (same); *Amigon v. Luzon*, No. 21-CV-02029, 2023 WL 316487, at *4 (S.D.N.Y. Jan. 19, 2023) (considering the "disposition of the charges against [p]laintiff" in ruling on a motion to dismiss a malicious prosecution claim).

[3] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

## II.   Documents Considered

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *Id.* (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)).

Defendants have submitted, in support of their motion to dismiss, excerpted transcripts from: (i) the June 15, 2012 bond hearing and (ii) the June 2015 trial from the criminal proceeding giving rise to Plaintiff's claims. (Randazzo Decl., Exs. B, C; Cardoso Decl., Ex. A). The Third Amended Complaint repeatedly references allegedly false testimony given by Defendants during the June 15, 2012 bond hearing (TAC ¶¶ 85-93) and during the subsequent trial (*id.* ¶¶ 115-128). The testimony offered at the bond hearing and trial are therefore deemed incorporated by reference. Separately, the testimony contained in the transcripts is integral to Plaintiff's Section 1983 claims that Defendants violated her constitutional rights by, *inter alia*, offering false testimony against

her. *See Jorgensen v. Cnty. of Suffolk*, 558 F. Supp. 3d 51, 59 n.4 (E.D.N.Y. 2021) (grand jury transcripts referenced in the complaint were incorporated by reference and "integral to plaintiff's Section 1983 claim that the blood test results were falsified").

Accordingly, in addition to the well-pled allegations in the Third Amended Complaint, the Court can and does consider the June 15, 2012 bond hearing transcript and June 2015 trial transcript submitted by Defendants in support of their motions to dismiss. (*See* Randazzo Decl., Exs. B, C; Cardoso Decl., Ex. A).

## ANALYSIS

### I.    John and Jane Doe Defendants

Plaintiff names "John and Jane Does 1-20" as defendants in the caption of the Third Amended Complaint but fails to plead any facts in the body of the pleading about these unidentified defendants.[4] It is "well-settled" that claims against defendants should be dismissed "where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff." *Dove v. Fordham Univ.*, 56 F.Supp.2d 330, 335 (S.D.N.Y. 1999)); *see also Amaker v. Gerbing*, No. 17-CV-03520, 2020 WL 5123400, at *1 (S.D.N.Y. Aug. 31, 2020) (dismissing claims against a "Lieutenant John Doe" defendant where

---

[4] Plaintiff argues that "due to the 30-page limit imposed by the Court, Plaintiff was unable to individually name each and every named [Defendant]." (Pl. Br. at 19). The Court initially ordered that the Third Amended Complaint "comply with the dictates of Federal Rule of Civil Procedure 8(a) and be no longer than 20 pages" in granting leave for Plaintiff to further amend her Complaint. (Doc. 131). Plaintiff then sought and received an enlargement of this page limit from 20 pages to 30 pages on October 4, 2022. (Doc. 133). The Court denied Plaintiff's application to enlarge the page limit for the Third Amended Complaint from 30 pages to 40 pages on October 11, 2022. (Doc. 135). To the extent Plaintiff seeks to point to the page limitation imposed by the Court on the Third Amended Complaint to excuse her failure to state a claim, the Court finds it unpersuasive. District courts are empowered with discretion in limiting—and even dismissing—pleadings that run afoul of Fed. R. Civ. P. 8(a). *See Grimes v. Fremont Gen. Corp.*, 933 F. Supp. 2d 584, 595 (S.D.N.Y. 2013) (collecting cases). The 30-page limitation imposed on the Third Amended Complaint was a permissible exercise of that discretion to ensure that the pleading complied with "short and plain" statement requirement imposed by Rule 8. Fed. R. Civ. P. 8. It is worth noting that Plaintiff's Second Amended Complaint (Doc. 107) spanned an unwieldy 98 pages.

the unidentified was named in the caption but plaintiff failed to plead any facts in the body of the pleading itself against the John Doe). Other than listing "John and Jane Does 1-20" in the caption, Plaintiff does not refer to these individuals anywhere else in the Third Amended Complaint. Accordingly, the Court dismisses Plaintiff's claims against John and Jane Does 1-20 for failure to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1).

II.      Plaintiff's Claims for Malicious Prosecution

"In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of [her] rights under the Fourth Amendment and must establish the elements of a malicious prosecution claim under state law." *Frost v. New York City Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (citing *Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010)). A plaintiff must allege: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Id.* However, when pressing a malicious prosecution claim under § 1983, the plaintiff must show also "that there was (5) a sufficient post-arraignment liberty restraint to implicate [her] Fourth Amendment rights." *Rohman v. New York City Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000). Defendants argue that Plaintiff has failed to sufficiently allege the first two elements of a malicious prosecution claim. (Def. Br. at 8-9). Specifically, Defendants argue that Plaintiff's malicious prosecution claims fails because: (i) the criminal charges did not terminate in Plaintiff's favor; and (ii) the District Attorney's independent decision to prosecute Plaintiff shields the Officer Defendants from liability. (*Id.*).

A.    Favorable Termination

"To demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim under § 1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction." *Thompson v. Clark*, 142 S.Ct. 1332, 1335 (2022). Defendants argue that Plaintiff cannot show a favorable termination of the underlying criminal proceeding because Plaintiff's conviction was "overturned on appeal due to application of the fruits of the poisonous tree doctrine and suppression of evidence upon a finding that Plaintiff's property was unlawfully searched." (Def. Br. at 8). Courts in the Second Circuit have held that the vacatur of a conviction satisfies the favorable termination element for a malicious prosecution claim. *See Pettiford v. City of Yonkers*, No. 14-CV-06271, 2022 WL 4538423, at *12 (S.D.N.Y. Sept. 28, 2022) ("the vacatur of Plaintiff's conviction after his guilty plea satisfies the favorable termination factor"); *Hincapie v. City of New York*, No. 18-CV-03432, 2022 WL 2870411, at *13 n.28 (S.D.N.Y. July 21, 2022) (holding that the vacatur of a plaintiff's conviction satisfies the favorable termination element of a malicious prosecution claim). Plaintiff's conviction was vacated and the charges against her were dismissed on appeal. *See Panetta*, 66 Misc. 3d 145(A), 2020 WL 742324. This disposition is sufficient to satisfy the favorable termination element of Plaintiff's malicious prosecution claims.[5]

---

[5] Plaintiff's conviction was vacated as a result of the appellate court finding that the physical evidence obtained on Plaintiff's property should have been suppressed because the warrants obtained by the officers were "dependent on observations that had been made during the illegal entry." *Panetta*, 66 Misc. 3d 145(A), 2020 WL 742324 at *2. It should be noted that while the vacatur of Plaintiff's conviction constitutes a favorable termination, the Second Circuit has "clearly held that the fruit of the poisonous tree doctrine does not apply to § 1983 claims." *Ortiz v. City of New York*, 773 F. App'x 54, 56 (2d Cir. 2019). As Judge Cronan noted in *Guillen v. City of New York*, "the fruit of the poisonous tree doctrine is inapplicable to civil section 1983 actions because it 'is a judicially created remedy designed to safeguard Fourth Amendment rights generally through deterrent effect, rather than a personal constitutional right of the party aggrieved.'" 625 F. Supp. 3d 139, 154 n.10 (S.D.N.Y. 2022) (quoting *Townes v. City of New York*, 176 F.3d 138, 145 (2d Cir. 1999)). Judge Karas likewise noted in *Hayes v. Perotta*, "[s]o, 'in the absence of evidence that the

B.     Commencement or Continuation of a Criminal Proceeding

Although the criminal proceeding giving rise to Plaintiff's claims terminated in her favor, Plaintiff nonetheless fails to state a claim for malicious prosecution because she has not plausibly alleged that Defendants "initiated" the prosecution against her. "In general, courts presume the prosecutor exercises independent judgment in deciding whether to initiate or continue a criminal proceeding." *Ventillo v. Falco*, No. 19-CV-03664, 2020 WL 7496294, at *11 (S.D.N.Y. Dec. 18, 2020). "A prosecutor's intervening decision to reduce and pursue charges against a plaintiff will break the chain of causation linked to an officer, unless there is 'evidence that the police officer misled or pressured the official who could be expected to exercise independent judgment.'" *Id.* (quoting *Townes*, 176 F.3d at 147); *see also Toussaint v. Cnty. of Westchester*, 615 F. Supp. 3d 215, 227 (S.D.N.Y. 2022) (dismissing a malicious prosecution claim against officer-defendants where "there is no allegation in the FAC that the City Defendants misled or pressured the [prosecutors], who independently prosecuted [p]laintiff").

Defendants argue that the Officer Defendants are shielded from liability for malicious prosecution because "Plaintiff concedes that the prosecutors knew that the reports were false and decided to prosecute her anyway." (Def. Br. at 9). Defendants further argue that in the Second Amended Complaint (Doc. 106, "SAC"), Plaintiff alleged that the prosecutor "knew or should have known officers executed multiple illegal searches" and that the prosecutor knew or should have known that "their own photographic evidence refuted their allegations." (Reply at 3-4). Plaintiff removed these allegations in the TAC, but as this Court noted in *Amigon v. Luzon*, even

---

police officer misled or pressured the official who could be expected to exercise independent judgment,' which could include judges or prosecutors, a plaintiff 'cannot recover damages for his conviction and incarceration' from police officers alleged to have conducted an illegal search." 751 F. Supp. 2d 597, 603 (S.D.N.Y. 2010) (quoting *Townes*, 176 F.3d at 147)).

where a complaint is amended, "the earlier pleading may be properly considered by the Court on a motion to dismiss when evaluating the plausibility of Plaintiff's claims, especially where, as here, they shed light on the claims Plaintiff attempts to raise in [her] Amended Complaint." No. 21-CV-02029, 2023 WL 316487, at *1 (S.D.N.Y. Jan. 19, 2023).

Separately, and in any event, Plaintiff's malicious prosecution claims fail because Plaintiff has failed to allege that the Officer Defendants "misled or pressured" the prosecutor in any way. *Toussaint*, 615 F. Supp. 3d at 227. Plaintiff offers "no concrete allegations for [her] assertion that the Officer Defendants played any role in [the prosecutor's] decision to prosecute." *Id.* at 227-28. The prosecutor's independent decision to prosecute thus breaks the chain of causation to the Officer Defendants for purposes of the first element of a malicious prosecution claim. Plaintiff's malicious prosecution claims—the first and second claims for relief—are, accordingly, dismissed.

III.   Plaintiff's Section 1983 Claim for Fabrication of Evidence

Plaintiff's sixth claim for relief is styled as one for fabrication of evidence "but is more properly considered as a claim for denial of a fair trial." *Hanniford v. City of Poughkeepsie*, No. 21-CV-10359, 2022 WL 17325762, at *7 (S.D.N.Y. Nov. 29, 2022) (citing *Ventillo*, 2020 WL 7496294, at *12). To establish such a claim, a plaintiff must show that "an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." *Ganek v. Leibowitz*, 874 F.3d 73, 90 (2d Cir. 2017). "To satisfy the third element, the fabricated evidence need not actually reach a jury." *Boykins v. Lopez*, No. 21-CV-02831, 2022 WL 2307684, at *9 (S.D.N.Y. June 27, 2022). Finally, "[p]robable cause is not a defense" to this claim. *Jovanovic v. City of New York*, 486 F. App'x 149, 152 (2d Cir. 2012).

10

This Court previously dismissed Plaintiff's fabrication of evidence claim in its May 18, 2020 Order of Service, where it held that "witnesses are absolutely immune from liability under § 1983 for damages for their testimony even if their testimony was false." (Doc. 7).[6] Given that the Court has already ruled that the Officer Defendants are absolutely immune from liability for allegedly false testimony, the law of the case doctrine commands that the prior ruling be adhered to at this juncture of the case. *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009) ("The law of the case doctrine commands that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case unless cogent and compelling reasons militate otherwise."). Accordingly, Plaintiff's fabrication of evidence claim is dismissed to the extent that it is based on Defendants' allegedly false testimony.

Plaintiff argues that her fabrication of evidence claim nevertheless survives because it is based not only upon Defendants' allegedly false testimony but also upon "false documents including false affidavits and applications for search warrants." (Pl. Br. at 10). Plaintiff alleges that Defendants deliberately fabricated "false official reports, false supporting affidavits, and false testimony" and further alleges that Defendants "used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information." (TAC ¶¶ 165-66). The TAC contains only conclusory allegations regarding Defendants' alleged fabrication of evidence and investigative techniques.[7] Plaintiff does not set

---

[6] The Court's May 18, 2020 Order of Service is also available on commercial databases. *See Panetta v. Cassel*, No. 20-CV-02255, 2020 WL 2521533, at *4 (S.D.N.Y. May 18, 2020).

[7] Plaintiff cites no case law in support of the contention that allegations regarding "coercive and abusive" investigative techniques can give rise to a Section 1983 claim for denial of fair trial, nor is the Court aware of any such case law. (TAC ¶ 166). Separately, and in any event, Plaintiff fails "to identify what 'fabrication' resulted from" the investigative techniques. *Harasz v. Katz*, 327 F. Supp. 3d 418, 447 (D. Conn. 2018) (holding that a plaintiff failed to state a claim for fabrication of evidence where plaintiff "failed to identify what 'fabrication' resulted from the disputed interview techniques"). Accordingly, to the extent that the fabrication of evidence claim is based on Defendants' investigative techniques, it is dismissed.

forth any allegations regarding what precise evidence or allegations Defendants fabricated, nor does she offer anything other than "mere conclusory statements regarding the defendants' alleged wrongdoing." *Jean-Laurent v. Cornelius*, No. 15-CV-02217, 2017 WL 933100, at *7 (S.D.N.Y. Mar. 8, 2017) (dismissing a fabrication of evidence claim where the complaint contained only conclusory allegations regarding the alleged fabrication). Plaintiff, at most, identifies categories of documents that allegedly contain fabricated evidence but fails to identify the actual fabrication by Defendants. (TAC ¶¶ 165-66). Such conclusory allegations are insufficient to state a claim for fabrication of evidence. *See Zeng v. Chell*, No. 19-CV-03218, 2022 WL 624873, at *5 (S.D.N.Y. Mar. 1, 2022) (holding that a plaintiff failed to plead a fabrication of evidence claim because "alleges generically that the defendants falsified evidence, a conclusory recitation that cannot support her claim"); *Hutchins v. Solomon*, No. 16-CV-10029, 2018 WL 4757970, at *16 (S.D.N.Y. Sept. 29, 2018) ("Conclusory statements that officers fabricated evidence to not suffice to state a claim for denial of a fair trial. Instead plaintiffs must identify the actual fabrication.").

Accordingly, Plaintiff's fabrication of evidence claim—the sixth claim for relief—is dismissed.[8]

IV.     Plaintiff's Section 1983 *Monell* Claim

Plaintiff's seventh claim for relief is brought under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) against the Town and County. Under *Monell*, a municipality may be held liable where a plaintiff's constitutional rights are violated because of a municipal policy or custom. *See Jimenez v. City of New York*, No. 18-CV-07273, 2020 WL 1467371, at *3

---

[8] Plaintiff's conspiracy to fabricate evidence claim necessarily fails given the Court's holding that Plaintiff has failed to state an underlying constitutional violation with respect to his fabrication of evidence claim. *See Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001). Accordingly, Plaintiff's conspiracy to fabricate evidence claim—the fifth claim for relief—is dismissed.

(S.D.N.Y. Mar. 26, 2020) ("Plaintiff must plead allegations that 'the government body itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation."). Such a claim requires that Plaintiff plead: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the injury." *Lockett*, 2021 WL 1092357, at *5. A *Monell* claim, however, "cannot lie in the absence of an underlying constitutional violation." *Galgano v. Cnty. of Putnam*, No. 16-CV-03572, 2020 WL 3618512, at *9 (S.D.N.Y. July 2, 2020). Plaintiff's *Monell* claim must be dismissed because, as discussed *supra*, Plaintiff has not pled an underlying constitutional violation. *See, e.g.*, *Schultz v. Inc. Vill. of Bellport*, 479 F. App'x 358, 360 (2d Cir. 2012); *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006).

Even if Plaintiff sufficiently pled a constitutional violation, her *Monell* claim would nevertheless fail because the TAC lacks allegations "supporting the existence of a municipal policy or practice." *Amigon*, 2023 WL 316487, at *6. Plaintiff argues that the allegations in the TAC "highlight[ ] the notorious history of constitutional violations by Def. Town," citing to a consent decree the Town entered and the New York State Attorney General's 2001 lawsuit against the Town regarding police misconduct. (Pl. Br. at 17-18 (citing TAC ¶¶ 176, 179, 185-87)). Plaintiff's allegations—apart from being too conclusory to support a *Monell* claim—do not show a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation" that Plaintiff claims she suffered. *Rivera v. Westchester Cnty.*, 488 F. Supp. 3d 70, 76 (S.D.N.Y. 2020); *see also Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 308 (2d Cir. 2020) ("For purposes of a § 1983 claim under *Monell*, a plaintiff must demonstrate a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."). Plaintiff cannot state a *Monell* claim absent

allegations affirmatively linking the Town's alleged failures in training its police officers to Plaintiff's alleged constitutional violations. Plaintiff's *Monell* claim is, accordingly, dismissed.

V.    Remaining Pendant State Law Claims

Plaintiff's remaining claims for intentional infliction of emotional distress and abuse of process—the third and fourth claims for relief—are brought under New York state law. The Court declines to exercise jurisdiction of these pendent state law claims because Plaintiff's federal claims have been dismissed. *See McLeod v. Jewish Guild for the Blin*d, 864 F.3d 154, 158 n.6 (2d Cir. 2017) ("a district court may decline to exercise supplemental jurisdiction over state and local law claims if it has dismissed all claims over which it has original jurisdiction."). Moreover, "because the Court declines to exercise jurisdiction over Plaintiff's state law claims, the Court need not and does not reach Defendants' substantive arguments for dismissal of those claims." *Jones v. Westchester Cnty*., No. 20-CV-08542, 2022 WL 1406591, at *6 n.7 (S.D.N.Y. May 4, 2022). Accordingly, Plaintiff's third and fourth claims for relief are dismissed without prejudice.

**CONCLUSION**

For the foregoing reasons, Defendants' motions to dismiss are GRANTED. Plaintiff's first, second, fifth, sixth, and seventh claims for relief are dismissed with prejudice. Plaintiff's remaining pendant state law claims—the third and fourth claims for relief—are dismissed without prejudice. Plaintiff's claims against John and Jane Does 1-20 are dismissed with prejudice.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

The Clerk of the Court is respectfully directed to terminate the motion sequences pending at Doc. 149 and Doc. 152 and close this case.

**SO ORDERED:**

Dated:   White Plains, New York
         September 7, 2023

_____
PHILIP M. HALPERN
United States District Judge